In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00097-CR
______________________________


HOYT SMITH, JR., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 02F0529-102


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION
          The trial of Hoyt Smith, Jr., for sexual assault took place April 19–20, 2005. The
jury, ultimately, found Smith guilty and assessed his punishment at seventy-five years'
imprisonment.


 Smith now appeals, contending the trial court erred by "excluding detailed
evidence that the initial physician to treat [the victim] on March 2, 2002[,] refused to
conduct a SANE exam when the same physician was unavailable to testify in spite of a
subpoena because she could no longer communicate." We affirm.
          We review a trial court's decision to admit or exclude evidence for abuse of
discretion. Green v. State, 934 S.W.3d 92, 101–02 (Tex. Crim. App. 1996); Middleton v.
State, 187 S.W.3d 134, 141 (Tex. App.—Texarkana 2006, no pet.). The trial court's
decision on such matters will not be reversed if that decision is within the "zone of
reasonable disagreement." Green, 934 S.W.2d at 102; Middleton, 187 S.W.3d at 141.
          In cross-examining Lieutenant Patrick Savage of the Bowie County Sheriff's
Department, Smith sought to elicit testimony regarding a conversation Savage had with
Morgen Rosenblum, M.D., one of the physicians who attended to the victim after she went
to the hospital for a rape examination. The State objected to the testimony as being
irrelevant and as being hearsay. Smith countered that admission of both the hearsay
testimony and Rosenblum's medical report was necessary because both contained
exculpatory information. Counsel for the State and Smith agreed that Rosenblum was
suffering from a neurological infection that would prevent her from testifying. The State's
relevancy objection was based in large part on its assertion that "Dr. Rosenblum refused
to do a SANE exam, but a SANE exam actually resulted . . . ." The trial court permitted
Smith to make a proffer of evidence outside the jury's presence. That proffer, which was
made immediately before the noon lunch hour April 20, 2005, included the following:
Q: Lieutenant Savage, you testified a moment ago that you had never
made the statement [to Rosenblum] that [this case] was important because 
[the victim's] brother was a [sheriff's] deputy. What you've got before you are
some doctor's notes based on the conversations that the doctor had with
you. Does that refresh your recollection at all about that night.
 
A:  My recollection is clear, sir, of that night. I don't - - I've never seen
these notes before.
 
Q: Okay.
A:  If you'll give me a minute to read them all.
Q: Yeah, that's what I'm asking you to do is look over those notes.
A:  (Reviews notes.) Her handwriting is hard to read, sir.
Q: Specifically, the top, I believe it's the righthand corner, where it
discusses your conduct that evening.
A:  I see what she wrote, sir.
Q. Okay. And then down on the bottom.
A:  "Discussed behavior of officer with supervisor, Bruce Birdwell."
Q: Okay. That's the line of questioning that I was going down a moment
ago that had to do with the conversation that you and Officer Birdwell had
regarding this case. Was the doctor's complaint ever lodged to you by
Officer - - ?
 
A:  Yes, sir.
Q: Okay. And was that resolved between the two of y'all?
A:  Between the lieutenant and I, sir?
Q: Yes.
A:  Yes, sir.
Q: Okay. Are you - - did you know [the victim] before this?
A:  No, sir.
Q: Did you know Stanley Cowley before this?
A:  Yes, sir.
Q: Were you aware that [the victim] was a friend of Stanley Cowley's?
A:  Yes, sir.
Q: Were you acquainted with her brother who used to be a deputy?
A:  Yes, sir.
Q: Okay. So you were aware that this was her brother?
A:  Yes, sir. I was when Lieutenant Cowley made me aware of it.
Q: When was that?
A:  That night. I don't remember who told me that was her brother. I
don't know if it was Lieutenant Cowley or Officer Richard Lever, that they
were related.
 
Q: Did you talk to Lieutenant Cowley that night?
A:  No, sir, I don't think I did.
Q: You don't recall having - - ?
A:  I don't recall if I did, sir. I talked to Deputy Lever.
Q: Did the alleged victim admit to you to having consensual sex recently?
A:  No, sir.
Q: Did she admit to the doctor at any point while you were around?
A:  Not while I was around. Not that I know of. I don't - -.
Q: Was the doctor hesitant to perform a rape exam?
A:  Yes, sir. The doctor was hostile.
Q: Okay. And did she give you a reason for that hostility?
A:  Yes, sir. She said that we need to take - - leave and go arrest him for
a misdemeanor charge, and I explained to the doctor that this was a felony
case and a very important case because it is a felony and it was a sexual
assault, and that we needed to gather evidence and make a case, that she
was no longer in any danger as far as family violence goes at that point. We
needed to go ahead and get our case made, and the doctor was very hostile
towards us.
 
Q: Is that something that normally happens, that a doctor will refuse to
do a rape exam?
 
A:  No, sir. It was real unusual that the doctor was hostile.
Q: Did she give you any reasons why she was hostile?
A:  No, sir, and we couldn't understand why.
Q: Was she acquainted with Mr. Smith in any way that you're aware of?
A:  Not that I'm aware of, sir.
The trial court then announced its ruling, outside the jury's presence:
THE COURT: All right, you can step down. For the purpose of the
record, the Court has, based on the proffer - - first of all, the Court will
acknowledge the fact that Dr. Rosenblum has not been subpoenaed by the
State. It has come to the Court's attention today or by representation by 
[Smith's counsel] that the doctor was subpoenaed this morning. Is that
correct?
[Smith's Counsel]: Yes, Your Honor.
THE COURT: That the doctor, at this point in time, is not present, as well
as the Court also makes notice that this case was set for - - March 21, 2005,
this case was set for trial this week. There has been sufficient time in order
to obtain Dr. Rosenblum's appearance up to this point in time. Also, there
are some notations mentioned by [Smith's counsel] in his proffer concerning
some medical records. There have been no affidavits on file, which makes
these medical records hearsay. The Court's concern primarily is that
everything that has been offered in the proffer, relating to the doctor's
testimony and/or records, are hearsay, and the Court is going to exclude that
testimony. The Court did allow the Defense the opportunity to establish in
front of the jury that the doctor was hesitant and resistant to offer the rape
exam. There was also a reference to recent sex. The Court finds, in
addition to hearsay, that that is also not relevant in a sexual assault case.
The record also shows Smith filed an application for a subpoena with the district clerk at
11:46 a.m., April 20, 2005, which would have been about the same time as the trial court
was hearing Smith's offer of proof. The subpoena application sought to have "Morgen
Rozenboom" [sic] brought to court for testimony, and was made returnable April 20, but the
application gave no physical address for this person (listing only "Bowie" County as the
person's address), and there is no evidence in the record that any person from the sheriff's
office attempted to serve "Morgen Rozenboom" with the subpoena. The trial court,
ultimately, excluded the above-referenced testimony, as well as the medical records, as
hearsay. 
          "'Hearsay' is a statement, other than one made by the declarant while testifying at
the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R.
Evid. 801(d). "Hearsay is not admissible except as provided by statute or these rules or
by other rules prescribed pursuant to statutory authority." Tex. R. Evid. 802. Excepted
from the hearsay rule are records of regularly conducted activities (when attested to by the
custodian of records or other qualified witness), and the former testimony, dying
declarations, or statement of personal or family history of someone who is unavailable to
testify pursuant to Tex. R. Evid. 804.
          First, any testimony by Savage about what Rosenblum said to Savage would clearly
have been hearsay. As such, the trial court did not act "outside the zone of reasonable
disagreement" by disallowing the testimony under the hearsay rule. Second, Smith's
proffer of evidence about the written medical report included no affidavit or live testimonial
sponsorship from a records custodian. Such is required by Rule 803(6). See Tex. R. Evid. 
803(6). Therefore, the medical records were hearsay, and the trial court properly excluded
their admission.
          Finding no error, we affirm the trial court's judgment.



                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      May 30, 2006
Date Decided:         July 21, 2006

Do Not Publish